UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BYRON D.,

            Plaintiff,

     v.                                                                      **DECISION AND ORDER**

                                         20-CV-1439S

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

_____

      1.     Plaintiff Byron D.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for supplemental security income under Title XVI of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.     Plaintiff's parent submitted a Supplemental Security Income disability application for him on January 24, 2013.  There, his father claimed Plaintiff was disabled since 1975 when Plaintiff was an infant due to anxiety disorder, major depressive disorder, panic disorder, post-traumatic stress disorder ("PTSD"), marijuana dependence, and obesity (R. at 73, 75).  The ALJ assigned to that application denied it on January 27, 2015, and the Appeals Council denied review on September 13, 2016 (R. at 73, 92).

      3.     Plaintiff then protectively filed his own application with the Social Security Administration on April 27, 2017.  Plaintiff alleged disability beginning on April 27, 2017, as an adult due to depression, PTSD, degenerative disc disease of the lumbar and

---

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

cervical spine, sciatica, and lumbar radiculopathy.  Plaintiff's application was denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

4. On May 21, 2019, ALJ JuanCarlos Hunt held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert Dr. Allison Shipp appeared and testified.  (R.[2] at 30-69, 15.)  At the time of the hearing, Plaintiff was 48 years old and had a limited education (R. at 24, 17).  He had no past relevant work (R. at 24) and no substantial gainful activity since the April 27, 2017, onset and application date (R. at 17).

5. The ALJ considered the case *de novo* and, on June 13, 2019, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

6. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 18, 19.)  Plaintiff filed a response on November 19, 2021 (Docket No. 23), at which time this Court took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion is **granted**, and Defendant's Motion is **denied**.

7. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v.

---

[2]Citations to the underlying administrative record are designated as "R."

[3]The ALJ's June 13, 2019, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

<u>Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir. 1982).

8.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  <u>Williams <i>ex rel</i>. Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a <i>de novo</i> review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

9.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, and it remains the proper approach for analyzing

whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119

(1987).

      10.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not,
> the [Commissioner] next considers whether the claimant has
> a "severe impairment" which significantly limits his physical or
> mental ability to do basic work activities.  If the claimant
> suffers such an impairment, the third inquiry is whether, based
> solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations.  If the claimant
> has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age,
> education, and work experience;  the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform
> his past work.  Finally, if the claimant is unable to perform his
> past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

      11.     Although the claimant has the burden of proof on the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra,

482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step

is divided into two parts.  First, the Commissioner must assess the claimant's job

qualifications by considering his physical ability, age, education, and work experience.

Second, the Commissioner must determine whether jobs exist in the national economy

that a person having the claimant's qualifications could perform.  See 42 U.S.C.

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

12. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since onset date of April 27, 2017. (R. at 17.) At Step Two, the ALJ found that Plaintiff has the following severe impairments: depression, PTSD, degenerative disc disease of the lumbar and cervical spine, sciatica, and lumbar radiculopathy. Id. at 17. At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 18-19.

13. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with restrictions such as frequently balance, crouch, kneel, crawl, stoop, and climb ramps, stairs, ladders, and scaffolds; he frequently can push, pull, and reach overhead bilaterally. Plaintiff should have no concentrated exposure to crowds; he needs to avoid jobs requiring performance at a production rate pace, such as assembly line work; he should have no exposure to hazards, such as unprotected heights, machines with moving mechanical parts, and driving employer vehicles. Plaintiff can understand, remember, and carry out simple instructions; he frequently can interact appropriately with supervisors; he occasionally can interact with coworkers and the public. He can make simple work-related decisions; he can tolerate few changes in a routine work setting; and he will be off task 10 percent of the day due to, for example, alternating positions between sitting and standing and/or attention or concentration lapses (R. at 20).

14.     At Step Four, the ALJ found Plaintiff had no past relevant work.  (R. at 24.) At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 24-25.)  Plaintiff's ability to perform light work is impeded by additional limitations.  The ALJ then asked the vocational expert what jobs a hypothetical claimant with Plaintiff's age, education, experience, and RFC could perform.  The expert opined that this claimant could perform such jobs as a laundry folder, warehouse checker, and hospital products assembler (all light exertion jobs) (R. at 24-25).  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 25.)

15.     Plaintiff argues that the RFC determination is not supported by substantial evidence.  For the reasons that follow, this argument—specifically adoption of the time off task finding in the RFC without substantial evidence—is adopted.

16.     First, Plaintiff argues that the ALJ's finding that Plaintiff would be off task 10% of a workday was not based upon substantial evidence (Docket No. 18, Pl. Memo. at 21-24).  He objects to the RFC finding that he would be off task only 10% of a workday (id. at 21; R. at 20).  This limitation was not found in the medical record or in Plaintiff's testimony (Docket No. 18, Pl. Memo. at 21).   A specific RFC assessment like the percentage of time off task must be based on evidence in the record, Brianna E. v. Comm'r, No. 20CV156, 2021 WL 2182716, at *3 (W.D.N.Y. May 28, 2021) (Geraci, C.J.) (quoting Wouters v. Comm'r of Soc. Sec., No. 19CV610, 2020 WL 2213896, at *2 (W.D.N.Y. May 7, 2020) (Geraci, C.J.)) (Docket No. 23, Pl. Reply Memo. at 4).

17.     The Vocational Expert used a hypothetical claimant being off task 10% of a workday as a threshold to preclude work (id. at 24; R. at 66).  The ALJ posed a hypothetical of a claimant being off task 10% of the day due to "for example, alternating

between positions and/or attention concentration lapses" (R. at 66) after asking a hypothetical where claimant is off task 5% of the day (R. at 65).

18.    Defendant argues that the Second Circuit rejected the argument that the ALJ cannot reach highly specific RFC findings (Docket No. 19, Def. Memo. at 18-19), Johnson v. Colvin, 669 F. App'x 44, 47 (2d Cir. 2016) (Summary Order).

19.    Defendant then contends that substantial evidence supports the ALJ's decision (id. at 19).

20.    The Second Circuit in Johnson distinguished two cases cited by Plaintiff here, Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014) (Summary Order), Cosnyka v. Colvin, 576 F. App'x 43, 46 (2d Cir. 2014) (Summary Order), that the problems in the 2014 cases was the lack of evidentiary basis for the stated limitation, Johnson, supra, 669 F. App'x at 47 (Docket No. 19, Def. Memo. at 18-19; cf. Docket No. 18, Pl. Memo. at 23).  The court in Johnson found there was substantial evidence in support of the ALJ's conclusion, 669 F. App'x at 47.

21.    Although Defendant argues there was substantial evidence for the 10% finding, Defendant does not point to the evidence supporting this off task finding (see Docket No. 23, Pl. Reply Memo. at 3).  This case thus is akin to Mariani and Cosnyka where the court found a lack of evidence for this specific finding.

22.    The ALJ found "somewhat persuasive" the opinion of consultant Dr. Susan Santarpia, Ph.D., that Plaintiff had intact attention and concentration (R. at 22, 23, 546). This is the sole reference in the record to Plaintiff's concentration which could form the basis for the ALJ's hypotheticals and (ultimately) the RFC finding regarding time off task.

23.     The single consultative examination does not provide substantial evidence for the specific finding regarding Plaintiff's time off task.

24.     Thus, upon the principles of Mariani and Cosnyka, Plaintiff's Motion for Judgment on the time off task finding in the RFC is granted.

25.     Second, Plaintiff argues that the ALJ failed to consider Plaintiff's need for supported living environment or supported employment services (Docket No. 18, Pl. Memo. at 17-19).

26.     Plaintiff claims the ALJ committed legal error by failing to consider or even mentioning statements from his vocational rehabilitation counselor, Nancy Conniff (Docket No. 18, Pl. Memo. at 17, 19-21; R. at 505).  Plaintiff faults the ALJ for not noting 238 pages of the record devoted to Plaintiff's supported living and his receipt of supported employment services from Conniff (id. at 18 n.4), or approximately a quarter of this record. He argues that the ALJ should not have rendered his conclusions without explanation of the disregarded portion of the record (id. at 18, citing Williams v. Berryhill, No. 16CV754, 2017 WL 4271750, at *5 (W.D.N.Y. Sept. 5, 2017) (Scott, Mag. J.) (Report & Rec.) (for a pre-March 2017 application), adopted, 2017 WL 4326474 (W.D.N.Y. Sept. 25, 2017) (Vilardo, J.)).  Errors in failure to consider evidence warrants remand (id., quoting Simpson v. Astrue, No. 11CV6500, 2013 WL 4495090, at *12 (W.D.N.Y. Aug. 19, 2013) (Feldman, Mag. J.)).

27.     Defendant counters that the ALJ was not required to discuss every piece of evidence submitted (Docket No. 19, Def. Memo. at 14, quoting Brault v. Social Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012)).

28.     Defendant points out that under the post-March 2017 standards Ms. Conniff is considered a nonmedical source, see 20 C.F.R. § 416.913(a)(4).  As such and under these new standards, the ALJ does not need to articulate how that nonmedical source evidence is considered, see id. § 416.920c(d) (id. at 14, 4-5).

29.     Plaintiff replies that the ALJ still needed to consider evidence from Ms. Conniff when the ALJ discussed Plaintiff's intensity, persistence, and limiting effects of his symptoms (Docket No. 23, Pl. Reply Memo. at 2), citing SSR 16-3p.

30.     Plaintiff filed his claim after March 27, 2017, hence the new rules for evaluating opinion evidence apply, 20 C.F.R. § 416.920c.  Thus, the ALJ is not required to articulate how each medical opinion or prior administrative medical finding is considered or how nonmedical sources are considered, id. § 416.920c(b)(1), (d).

31.     SSR 16-3p remains in effect after amendment in 2017 of the medical evaluation standards.  SSR 16-3p provides "Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," SSR 16-3p.

32.     The ALJ listed the exhibits to include progress notes from ACCES-VR, the supported vocational assistant to Plaintiff (R. at 28, 33-36, 285-344, 349-79, 395-521, 922-41; Docket No. 18, Pl. Memo. at 18).

33.     At issue is whether the ALJ considered the ACCES-VR exhibits.  It is unclear from the ALJ's decision whether the ALJ considered those exhibits (even if rejected).

9

34.     Upon remand ordered above, the ALJ can explicitly state whether the ACCES-VR materials were considered in determining the intensity and persistence of Plaintiff's symptoms.  Plaintiff's Motion (Docket No. 18) is granted on this ground.

35.     Third, Plaintiff contends the ALJ committed reversible error by failing to make specific findings regarding how stress limits Plaintiff's ability to work (Docket No. 18, Pl. Memo. at 24-25).

36.     Dr. M. Momot-Baker, Ph.D., on August 18, 2017, reviewed the evidence to date and opined that Plaintiff had mild limitation in his ability to understand, remember, or apply information; and moderate limitations in his abilities to interact with others; concentrate, persist, or maintain pace, and adapt or manage himself (R. at 102, 22; Docket No. 18, Pl. Memo. at 14).  For evaluating Plaintiff's ability to adapt, Dr. Momot-Baker concluded that Plaintiff "would benefit from a low-stress work environment but is able to cope with minor changes and make routine decisions" (R. at 108, 22; see Docket No. 19, Def. Memo. at 13).

37.     Plaintiff later observed that "the ALJ found that opinion of Dr. Momot-Baker 'somewhat persuasive'" including the doctor's recommendation of low-stress work (Docket No. 18, Pl. Memo. at 24, citing; R. at 22).

38.     Defendant responds that the agency's earlier assessment of Dr. Momot-Baker's opinion (see R. at 120) is not applicable in the present case because the present ALJ makes his own decision de novo (Docket No. 19, Def. Memo. at 13 n.12).  Plaintiff, however, cited to the ALJ's decision (Docket No. 18, Pl. Memo. at 24, citing; R. at 22).

39.     Defendant also noted that the ALJ considered Plaintiff's testimony regarding causes for Plaintiff's stress (id. at 14; R. at 53).

40.     Plaintiff now argues that the ALJ did not assess Dr. Momot-Baker's opinion regarding Plaintiff's need for low-stress work environment with "any specificity" (Docket No. 18, Pl. Memo. at 25, R. at 108).

41.     Defendant is correct that Plaintiff read the above agency assessment out of context.   The ALJ under the March 2017 standards did not need to specify the persuasiveness of a medical opinion; rather, the ALJ must "explain how we considered the supportability and consistency factors for a medical source's medical opinion . . . in your determination or decision," 20 C.F.R. § 416.920c(b)(2).   Plaintiff cites to precedent under the former standard for considering medical opinion (Docket No. 18, Pl. Memo. at 25, citing Cooley v. Berryhill, No. 16CV6301, 2017 WL 3236446, at *1, 11, 12 (W.D.N.Y. July 31, 2017) (Wolford, J.); Bryant v. Berryhill, No. 17CV6060, 2017 WL 6523294, at *1, 4 (W.D.N.Y. Dec. 2017) (Geraci, C.J.)).

42.     Here, the ALJ considered Dr. Momot-Baker's observation about the work environment, noted from that opinion that Plaintiff would benefit from low-stress work environment, found it was "somewhat persuasive," and acknowledged that Plaintiff can cope with minor changes (R. at 22).   The ALJ found it was supported and consistent with the evidence showing Plaintiff having "generally normal mental status examinations" and Plaintiff not being compliant with taking his medications (R. at 22).   The ALJ's finding also is consistent with the second part of the doctor's opinion affirming Plaintiff's ability to cope with minor changes and make routine decisions (R. at 22, 108).

43.     Therefore, Plaintiff's Motion for Judgment (Docket No. 18) on this last ground is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 18) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 19) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:       March 23, 2022
             Buffalo, New York


                                          s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                      United States District Judge